THE STATE OF OHIO, APPELLANT, *v.* DIEHL, APPELLEE.

[Cite as State v. Diehl (1981), 67 Ohio St. 2d 389.]

(No. 80-1655—Decided July 29, 1981.)

*Mr. James A. Berry,* prosecuting attorney, and *Mr. James W. Skogstrom,* for appellant.
*Mr. James N. Griffin,* for appellee.

*Per Curiam.* In support of his argument that the reversal of his convictions should be affirmed, appellee contends that (1) the state improperly used McGhee's grand jury testimony as substantive evidence of appellee's guilt, and (2) the introduction of McGhee's grand jury testimony violated appellee's Sixth Amendment[1] right of confrontation.

Under controlling Ohio law at the time of the trial of this cause,[2] the condition precedent to the right of a party to cross-examine its own witness concerning a prior statement made by him that varies with the witness' current testimony is that the party be taken by surprise by the adverse testimony. *State*

---

[1] The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

[2] We note, parenthetically, that Evid R. 607, effective July 1, 1980, permits parties to impeach their own witnesses.

v. *Minneker* (1971), 27 Ohio St. 2d 155, 158; *State* v. *Duffy* (1938), 134 Ohio St. 16. The decision as to whether a party is taken by surprise by the testimony of its hostile witness is a decision that is entrusted to the broad, sound discretion of the trial judge. *State* v. *Minneker, supra; United States* v. *Duff* (C.A. 6, 1964), 332 F. 2d 702. We have examined the record in this case and agree with the finding of the trial court and the conclusion of the Court of Appeals that the state was surprised by McGhee's trial testimony. The courts below correctly decided that the state had a right to believe that McGhee would not willfully contradict, under oath, his prior grand jury testimony, thus subjecting himself to a potential perjury charge. Therefore, the trial court did not abuse its discretion in declaring McGhee to be a hostile witness.

As the transcript demonstrates, McGhee's trial testimony differed radically and materially from his prior testimony before the grand jury. The prosecutor, in reading McGhee's grand jury testimony to him, did so for the purpose of affording him ample opportunity to correct his mistakes or omissions. It is imperative to note that the prosecutor did not, in refreshing McGhee's recollection, offer the grand jury testimony as substantive evidence of appellee's guilt or for the purpose of impeaching the witness. *Stated differently, the grand jury testimony was employed not for the purpose of proving that appellee forged a check or received stolen property, but, rather, for the purpose of refreshing McGhee's memory.* As this court stated in *Hurley* v. *State* (1888), 46 Ohio St. 320, 323:

"***The recollection of the witness may be so refreshed by directing his attention to a former conversation or declaration, as to cause him promptly to correct his testimony or explain the apparent inconsistency. For this purpose such examination may afford valuable aid in judicial investigation; and, if it be competent at all for that purpose, the reason for admitting it would seem to require, that the examination should be allowed to extend so far as to permit the former statements to be repeated to the witness, and inquiry to be made of him concerning them; for the repetition of the statement itself, referring to the circumstances of its utterance, would be the most likely means of awakening the recollection of the witness, enabling him to recall the facts, satisfy him of

his mistake, and induce a correction or explanation. Or, if the witness be a perverse or false one, such examination may serve to probe his conscience, and move him to relent and speak the truth. We think it a reasonable rule, that a party who calls a witness, and is taken by surprise by his unexpected adverse testimony, may be permitted to interrogate him in respect to declarations and statements previously made by him which are inconsistent with his testimony, for the purpose of refreshing his recollection and inducing him to correct his testimony, or explain his apparent inconsistency, and for such purpose his previous declarations may be repeated to him; and he may be called upon to say whether they were made by him.''

Our reading of the trial transcript[3] compels us to conclude

[3] The following are representative excerpts from the prosecutor's examination of McGhee:

"*Open Court*:

"*By Mr. Pappas*:

"Q. Mr. McGhee, do you recall being called before the Clark County Grand Jury on February 22nd, 1979?

"A. Yes, I do.

"Q. And do you recall testifying before the the Grand Jury?

"A. Certain things, yes, I do.

"Q. Do you recall me asking you a question? The question went like this, 'Now, in addition to that, you've admitted your involvement in passing a check at the Keg'n Cork, and that check was made out to you. Would you tell us, please, where you got the check?'

"Do you recall me asking that question?

"A. No, you didn't ask me that, Mr. Pappas, at the Grand Jury Hearing.

"* * * *

"*By Mr. Pappas*:

"Q. Mr. McGhee, do you recall your answer, 'Boy, you want everything, don't you? The same place—Billy Diehl.' Do you recall answering that?

"A. No, sir. Mr. Pappas, if you remember correctly, you told me who was involved.

"Q. Are you denying, Mr. McGhee, that these are your words that I'm reading?

"A. No, I'm not denying that some of the statements in there are my words, Mr. Pappas. It's just the same thing happened in another hearing. It's not all my words.

"Q. You're saying that these words have been changed? They are not accurate?

"A. I don't want to say that. I mean, you know, all I know is what I said. I can remember what I said and I don't—I know I didn't say nothing about who was involved in it.

"Q. Do you recall the next question, 'Okay. When did you get the check from Billy Diehl? How long before you cashed it?'

"Your answer, 'Three days. Two days.Three days.' Do you recall that?

"A. No, because I didn't—I did not get the check from Mr. Diehl.

that the prosecution properly directed McGhee's attention to his prior, conflicting grand jury testimony for the purpose of refreshing McGhee's recollection and inducing him to explain the apparent inconsistencies between his trial testimony and his grand jury testimony. We also observe, parenthetically, that there is no indication in the record that defense counsel requested a limiting instruction from the court in order to explain to the jury the purpose for which this grand jury testimony was being used. Thus, through this point in the trial, the prosecutor's examination of McGhee was, in light of all the factors, routine and proper.

However, the trial court erred in allowing the prosecutor to call, as a witness, the court reporter who had transcribed McGhee's grand jury testimony and in permitting her to read, into evidence, the identical portion of the grand jury testimony that the prosecutor had used in attempting to refresh McGhee's recollection. While it is beyond our purview to second-guess prosecution strategy, we are unable to understand the tactical rationale of calling the reporter as a witness. Using another witness, like the reporter, to read McGhee's grand jury testimony into evidence to prove his inconsistent statements violates the principle of not impeaching one's own

"Q. Next question, 'Did he make out the check or did you?'

"Your answer, 'I did.'

"* * *

"Q. Question, 'What did you do with the money from the check?'

"Answer, 'Spent it.'

"Question, 'Did they get any of it?'

"Answer, 'Yes.'

"Question, 'Both of them or just one?'

"Answer, 'Just one.'

"Question, 'Which one?'

"Answer, 'Billy.'

" 'Billy got the money?'

"You nodded; 'And you got part of it?'

"Your answer was, 'Yep.'

"Is that correct? Did you testify that Billy got part of the money?

"A. No, sir, I didn't. I didn't testify nothing about who got any money. Like I said, Mr. Pappas, Mr. Diehl or neither one of the Diehls was with me. It was me and Donnie Engle. I said if the man at Keg'n Cork would see a picture of Mr. Engle then I'm sure he could identify him.

"Q. Okay. Another question, 'The check was what? Seventy-some dollars?'

"Answer, 'Yes.'

"* * *"

witness, as established in *State* v. *Dick* (1971), 27 Ohio St. 2d 162; *State* v. *Minneker, supra; State* v. *Duffy, supra; Hurley* v. *State, supra.*

Conceding that the court reporter's testimony was erroneously allowed, the focal point of this case then becomes whether such error was prejudicial to appellee. *Chapman* v. *California* (1967), 386 U. S. 18; *State* v. *Eubank* (1979), 60 Ohio St. 2d 183; *State* v. *Adams* (1978), 53 Ohio St. 2d 223; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391; *State* v. *Abrams* (1974), 39 Ohio St. 2d 53.

It must be emphasized that the court reporter read the identical portion of the grand jury testimony that the prosecutor had used in attempting to refresh McGhee's recollection. Thus, the jury had already heard this grand jury testimony by the time the court reporter repeated it. While, as previously indicated, allowing the court reporter to testify in this fashion was erroneous, we are unable to discern any harm to appellee's cause from the rote repetition of grand jury testimony with which the jurors were already familiar. Thus, the court reporter's testimony added nothing prejudicial to the record. Consequently, under the unique facts of the case at bar, we conclude that the admission of the court reporter's testimony was harmless beyond a reasonable doubt. *Chapman* v. *California, supra.*

We summarily reject appellee's contention that the use of McGhee's grand jury testimony violates his constitutional right to confront his accusers. A careful reading of the Confrontation Clause cases from this and other courts reveals that a constitutional issue is normally only raised when the prior testimony or statement of an unavailable witness is used at a subsequent trial as substantive evidence of guilt of a defendant. See *Ohio* v. *Roberts* (1980), 448 U. S. 56 (admission at defendant's prosecution of testimony of unavailable witness given at defendant's preliminary hearing under questioning of defense counsel, held not violative of Sixth Amendment's Confrontation Clause). See, also, *California* v. *Green* (1970), 399 U. S. 149; *Barber* v. *Page* (1968), 390 U. S. 719; *State* v. *Madison* (1980), 64 Ohio St. 2d 322. The case at bar is readily distinguishable from the foregoing precedent because (1) McGhee was available and testified at the trial, and (2) his

grand jury testimony, as previously discussed, was principally used to refresh his recollection and not used as substantive evidence of appellee's guilt.[4]

A case like this compels us to make, in conclusion, several observations. First, one reason we sanction the prosecutor's use of the grand jury testimony to refresh McGhee's recollection is because this tactic, as articulated in *Hurley* v. *State, supra,* is designed to elicit fully the facts material to this case.

---

[4] We look askance on appellee's claim that his right to confront McGhee was impermissibly hampered. McGhee testified at trial and was subject to cross-examination by defense counsel. What follows is the extent of that cross-examination by both defense attorneys:

"*Cross Examination*

"*By Mr. Bennington:*

"Q. Mr. McGhee, I have just one question. Was in fact Billy Diehl involved in any way in the passing of this check in the cashing of it?

"A. No, sir, he wasn't, Mr. Bennington.

"Q. Did he give it to you?

"A. No, sir.

"*The Court*: Mr. Lagos.

"Step up, please.

"(Whereupon, Defendant's***Exhibit Number One was marked for identification.)

"*Mr. Lagos*: It please the Court, I have no questions, although I would reserve the right to recall this witness.

"*The Court:* He will be available. Do you have anything else?

"*Mr. Papas*: I have nothing else at this time."

As the United States Supreme Court ruled in *California* v. *Green* (1970), 399 U. S. 149, 157-158:

"Our own decisions seem to have recognized at an early date that it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:

" 'The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' *Mattox* v. *United States,* 156 U. S. 237, 242-243 (1895)."

Clearly, appellee had the opportunity to confront McGhee at the trial. The use which defense counsel made of this confrontation is, of course, a matter of trial strategy. *United States* v. *Allen* (C.A. 10, 1969), 409 F. 2d 611, 613. See, also, *State* v. *Roberts* (1978), 55 Ohio St. 2d 191, 199 (Celebrezze, C. J., dissenting), reversed *sub nom, Ohio* v. *Roberts* (1980), 448 U. S. 56.

Secondly, to tolerate the chicanery of McGhee in this case[5] is an affront not only to the prosecutor's attempt to enforce the law, but also to the people of Ohio, whom the prosecutor represents. To affirm the Court of Appeals in this case would be to legitimatize one more headwind to effective law enforcement. This we refuse to do.

As Justice Cardozo so perceptively stated in *Snyder* v. *Massachusetts* (1934), 291 U. S. 97, 122: "***But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained til it is narrowed to a filament. We are to keep the balance true.

"***There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free."

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

STEPHENSON and P. BROWN, JJ., dissent.

STEPHENSON, J., of the Fourth Appellate District, sitting for W. BROWN, J.

STEPHENSON, J., dissenting.   I fully concur in the majority opinion with respect to the conclusions therein that the introduction of the grand jury testimony of McGhee through testimony of the court reporter who recorded the grand jury proceedings was error, but not a violation of appellee's constitutional right of confrontation. However, I am unable to join in the further conclusion that the error was harmless and, hence, respectfully dissent.

The rule in effect when this cause was tried is succinctly

---

[5] In his grand jury testimony, McGhee implicated the Diehl brother. However, in his trial testimony, McGhee implicated, instead, a Mr. Don Engle, who had been killed in a barroom fight and thus, conveniently was unavailable to corroborate or deny this story.

set forth in *State* v. *Dick* (1971), 27 Ohio St. 2d 162, 165, as follows:

"This court has long adhered to the principle that 'when taken by surprise by the adverse testimony of its own witness, . . . the state may interrogate such witness concerning his prior inconsistent . . . statement . . . for the purpose of refreshing the recollection of the witness, *but not for the purpose of offering substantive evidence against the accused.*' (Emphasis supplied.) *State* v. *Duffy* (1938), 134 Ohio St. 16, 17. See *Hurley* v. *State* (1888), 46 Ohio St. 320, 322; *State* v. *Minneker* (1971), 27 Ohio St. 2d 155."[6]

My analysis of the record differs from that set forth in the majority opinion in that I am persuaded the state, and in all probability the jury, improperly utilized the grand jury testimony of McGhee through the hearsay testimony of the grand jury reporter, not only as direct impeaching evidence, but as substantive testimonial evidence of appellee's guilt.

The trial court gave no instruction, either at the time of admission of the testimony of the grand jury reporter or in the general charge, limiting the use of such testimony for impeachment purposes only.[7] The record tends to establish that the court itself viewed the testimony as substantive evidence in that, in response to a motion for acquittal by counsel for appellee's brother and co-defendant at the end of the state's case upon the basis that the evidence was circumstantial and insufficient, the court stated, "If that was the only thing, I would direct, but you have got the testimony of McGhee. Overruled."

---

[6] As to the use for impeachment, and also substantive evidence, of prior inconsistent statements of a witness, made under oath in a prior proceeding, permitted by the Ohio Rules of Evidence, effective July 1, 1980, see Evid. R. 801(D)(1)(a), and the limitation therein respecting the right of cross-examination at the time such prior inconsistent statement was made. In essence, as noted in the staff note to such rule, grand jury testimony still cannot be utilized as substantive evidence against a defendant because of the lack of the right of cross-examination of the witness before the grand jury.

[7] In allowing the interrogation of one's own witness, when taken by surprise by unfavorable and unexpected testimony, as to declarations and statements previously made by the witness, the opposite party is entitled to an instruction "that such previous contradictory testimony is not to be considered as evidence." *State* v. *Duffy* (1938), 134 Ohio St. 16, 23. However, appellee herein cannot be penalized for failure to request a limiting instruction with respect to the court reporter's testimony since it was not admissible for *any* purpose.

Since the in-court testimony of McGhee was exculpatory as to both defendants, "the testimony of McGhee" necessarily refers to his testimony before the grand jury.

That the prosecution utilized the court reporter's testimony as substantive evidence, and urged its acceptance by the jury as evidence of appellee's guilt, is demonstrable by the following excerpts from the state's closing argument: "Now, all the pieces fit together. Danny Diehl had to have a check to make it out and where is Danny Diehl going to get the check? How is he going to get it out of the residence of Mrs. Morris? That check didn't fly. It had to come from that residence to him, and I submit to you his brother was the one that was working in there and his brother was the one that had the access to it *and his brother is the one that Benny McGhee says gave him the check.*"

Again, in final closing argument by the state and in response to a defense argument that one Scarborough who was with William Diehl was in the Morris home and could have taken the check which McGhee in his in-court testimony stated he found in an auto parts store, the state argued as follows:

"If you want to believe that story, that is your prerogative, but it doesn't hold water. It doesn't hold water at all. *In fact, the testimony of Mr. McGhee, as he gave it to the Grand Jury, holds water very well. He told you there were three people, him and two others, and he told you who those two people were and that was verified by Mr. Bangart.* When he gets on the stand here, he says only two and one of them is a dead guy and the dead guy filled it in, which is in conflict with your expert testimony that says this man filled it in.

"You've got to take all of the evidence we presented you together. *You have got to take Benny McGhee's testimony.* You've got to take the handwriting. You've got to take the fact that the check was stolen in a place that he was working. No one piece of evidence will stand on its own, but just as in the law of large numbers, 12 points make the case. In this case, all the evidence we have combined is sufficient to prove our case beyond a reasonable doubt, which is our requirement."

In its instructions to the jury the court gave a standard evidence instruction which provided, *inter alia*, "*Evidence is all of the testimony received from the witnesses during the trial*

and the exhibits which you will have with you in the jury room."

The Court of Appeals considered and rejected the question of whether the error was harmless in the following language:

"The evidence against appellant was far from overwhelming and much of the evidence presented was circumstantial. In light of the fact that both appellant and his brother, William Diehl, were tried together, the admission of Benjamin McGhee's earlier testimony before the grand jury that he (McGhee) had obtained the check in question from William Diehl, that both William and Danny Diehl (appellant) were with him when he cashed the check and that William Diehl shared in the proceeds from the check was particularly damaging, especially in view of the testimony establishing a close association among appellant, his brother (William Diehl) and Benjamin McGhee. We cannot say beyond a reasonable doubt that had the grand jury testimony of Benjamin McGhee not been erroneously admitted, the jury would nevertheless have reached the same conclusion and found appellant guilty of the offenses charged. The error was not harmless beyond a reasonable doubt."

I agree with the above analysis. Assuming, *arguendo,* that the error is non-constitutional in character so the strict standard of *Chapman* v. *California* (1967), 386 U. S. 18, need not be applied and that a lesser standard of whether substantial evidence exists to support the guilty verdict without such erroneous evidence applies, see *State* v. *Davis* (1975), 44 Ohio App. 2d 335; Crim. R. 33(E)(3); cf. *State* v. *Cowans* (1967), 10 Ohio St. 2d 96, even under such standard the error is not, in my view, harmless.

Accordingly, I would affirm the Court of Appeals.

P. BROWN, J., concurs in the foregoing dissenting opinion.