JOURNAL ENTRY AND OPINION
Defendant-appellant Christopher Lenhart appeals from his conviction for rape (R.C. 2907.02) following a jury trial in which he was also convicted of felonious assault (R.C. 2903.11). The defendant contends the trial court erred in allowing the State to impeach its own witness; in denying defendant's Crim.R. 29 (A) motion for acquittal; and limiting cross-examination of the victim. Defendant also contends he was deprived of effective assistance of counsel guaranteed by the State and Federal Constitutions and his convictions were against the manifest weight of the evidence. We find no reversible error and affirm.
The victim, Connie Sorenson (37 years of age), and her boyfriend, Jerry Ihle, ran out of gas near W. 150th and I-480 in the early morning hours of June 30, 1997. After unsuccessful efforts to start the car, the defendant and his companion, Dennis Dranse, eventually pulled over and offered to assist by getting jumper cables.
According to Ms. Sorenson's testimony, instead of driving to the nearby gas station to get the jumper cables, Dranse pulled the car into a driveway and into a garage. Defendant told Ms. Sorenson to get out of the car and follow him behind the house into a field. They started walking through the field when suddenly the defendant hit her in the face with his fist. She began bleeding. The defendant kept hitting her and telling her to keep walking.
Defendant continued to hit her and told her that she was going to perform oral sex on him. After being forced to perform oral sex on defendant, he pushed her to the ground onto a metal sheet laying in the tall grass. Defendant initially penetrated her vaginally, but she held her hand over her vagina to prevent any further penetration.
At some point during this ordeal, Dranse walked into the field and saw what was happening. Defendant told Dranse to get out of there. After defendant was finished, he told Ms. Sorenson that she was now going to "please" Dranse. However, Dranse refused and no sexual contact took place between them.
Defendant then ripped off all of Ms. Sorenson's remaining clothes and scattered them all over the field leaving her naked and bleeding. As he was leaving, defendant kicked her in the ribs.
Ms. Sorenson further testified that she believed that she "blacked out" for a time. After defendant left her naked, she began walking through the field until she came to a house with a swimming pool. She took a beach towel from poolside which she used to cover herself. The inhabitants of the house were scared of the blood on her face and refused to give her a ride back to the stranded truck, but pointed her in the direction of W. 150th and I-480. Ms. Sorenson eventually found her way back to her boyfriend and the disabled truck. After getting their truck jump-started by some workers passing by, they called the Cleveland Police.
The Cleveland Police met Ms. Sorenson at Fairview General Hospital. After she received treatment, she took the police back to the scene of the crime. The police retrieved all of her torn clothes that had been scattered over the field.
Cleveland Police Officer Stephanie Hall testified that on June 30, 1997, she was dispatched to assist a rape victim at W. 150th Street near Brookpark Road. Upon her arrival, EMS was already on the scene and proceeded to Fairview General Hospital with the victim, Connie Sorenson. At the hospital, Officer Hall interviewed Ms. Sorenson and gave the following description:
 She was very emotionless, her face was black and blue, bloody, a lot of dried blood, her hair was messed up all over her head.
(Tr. 191).
After Ms. Sorenson was treated at the hospital, Officer Hall collected the rape kit from the hospital personnel and Ms. Sorenson led her to the scene of the crime.
Officer Hall testified that the crime scene was in an open field in the area of West 146th Street and Justin Avenue. The victim and Officer Hall went around the field collecting her clothes, which were admitted in evidence.
Dr. George Librandi, a specialist in emergency medicine at Fairview General Hospital, testified that he treated Ms. Sorenson for her injuries on June 30, 1997 after she arrived at the emergency room at 8:20 a.m. She recounted that she was trying to get jumper cables to fix her car when two assailants struck her. She was struck three or four times in the face, and dragged into a field by two men. She stated that penile penetration was attempted, but did not occur and there was transient penetration of her mouth. Ms. Sorenson also complained of left anterior lateral rib tenderness which x-rays revealed was from a fractured sixth rib. Dr. Librandi's physical examination revealed that Ms. Sorenson was "distraught, upset and agitated." There was ecchymosis or black and blue marks around her left eye; there were superficial vertical lacerations on the forehead; and an abrasion about half a centimeter over the medial portion of the left eyebrow. These wounds were big enough to be sutured, but Ms. Sorenson refused to have the wounds closed with stitches.
Dr. Librandi testified that Ms. Sorenson was unable to take full deep breaths without pain in her chest wall as a result of the broken rib. She was given pain medication as treatment. Dr. Librandi also prepared a rape kit examination of Ms. Sorenson.
Tina Wolff, a scientific examiner for the Cleveland Police Department, testified that she examined the clothing of the victim collected at the scene by Officer Hall. Ms. Wolff observed and tested blood stains on the clothing, which tested Type 0, the same type as Ms. Sorenson. The clothing was badly torn.
Cleveland Police Officer Carlos Gabriel was Officer Stephanie Hall's partner on the morning of June 30, 1997. He first noted the injuries to Ms. Sorenson at Fairview General Hospital. Officer Gabriel also went to the crime scene to retrieve the clothing and described the natural state of the field which he identified on a map. Officer Gabriel testified that Ms. Sorenson gave them the name of the suspect as "Chris," but she did not know his last name.
Defendant's companion, Dennis Dranse, was called as a State's witness. He corroborated in large part Ms. Sorenson's account of the attack in the field. Dranse testified that he and defendant stopped and asked if Ms. Sorenson needed any help. She asked them if they could get any jumper cables. Dranse said "yes" because he thought that they could get a pair at his mother's house at 5293 W. 15Oth. Ms. Sorenson then got into their car and they went to the house, but his mother was not home and he could not get the cables. Dranse testified that they then went back to the truck where she got out and asked them if they knew where to get some dope. After they answered "yes" she got back into the car and they drove to a house off Puritas Avenue known to defendant. Defendant went into the house and came back out. Dranse testified that he never saw any dope. Danse then drove to the "rez" which he described as a field near W. 146th and Puritas. Dranse testified that the defendant told him to drive to the "rez" so that she could "taste some dope." When they arrived, defendant and Ms. Sorenson got out of the car and went into the field. Dranse sat in the car and waited for them. After a while, Dranse got out and walked into the field to find them. Dranse then testified that he saw defendant standing in the field with Ms. Sorenson and defendant putting his shirt on. His testimony regarding what he saw and heard in the field differed greatly from his written statement that he gave to Det. Coleman on October 25, 1997. The disputed part of his testimony will be discussed under Assignment of Error I in which defendant complains of the State's impeachment of its own witness.
Jerry Ihle, Ms. Sorenson's boyfriend, testified that on June 30, 1997, his truck ran out of gas on W. 150th Street. He described events leading up to the victim going off with two men in a white car to get some jumper cables. However, the two men came back without Ms. Sorenson and asked Mr. Ihle for $20 for a deposit on the jumper cables. When Mr. Ihle asked where Ms. Sorenson was, the pair drove away.
Cleveland Det. Patricia Coleman of the Sex Crimes Unit testified that she initially interviewed Ms. Sorenson on July 3, 1997 and revisited the general area of the crime scene with her to identify the house at which the car in question stopped and whether or not she could find the car. Subsequently, on July 6. 1997, Ms. Sorenson called the police and stated that she had been followed by the suspect's car and was able to get a license plate number. The license plate number was run through the police computer and came back listed to a Nancy Dranse. Det. Coleman later learned that Nancy Dranse was the mother of Dennis Dranse and lived at 5293 W. 150th Street. Going to the house, the detectives spoke with the granddaughter of Nancy Dranse. From the conversation with the granddaughter, the detectives got the name of Chris "Lionheart." The officers checked the Lakewood police registry on July 6, 1997 for a Chris Lionheart, but there was no listing.
After going back to the residence on numerous occasions, the detectives talked to Nancy Dranse in early August and told her that they were looking for Dennis Dranse. The officers again checked the Lakewood police registry and received the similar name of Chris Lenhart. On October 10, 1997, they had made an appointment to talk with Dennis Dranse, but he failed to keep the appointment. Eventually, Det. Coleman gave the name of Dennis Dranse to the Repeat Offenders Program Enforcement Unit (ROPE) of the Cleveland Police Department, and Dranse was apprehended on October 24, 1997. On October 25, 1997, Dranse gave a written statement to the police implicating defendant. Defendant was apprehended by the ROPE Unit and also gave a written statement on October 25, 1997.
Det. Coleman then read defendant's statement to the court and was questioned about it. In his written statement, defendant stated that on June 30, 1997 he was probably with his girlfriend, Elizabeth Smith. Defendant admitted knowing Dennis Dranse, but denied hanging around with him; denied being with Dranse on June 30, 1997; and denied assisting a stranded female motorist on June 30, 1997.
Det. Coleman also testified that on October 25, 1997, she showed Ms. Sorenson a photo array of five white males from which she identified the picture of the defendant. She also picked the picture of Dennis Dranse and identified him as the driver.
At trial, the defendant testified on his own behalf and stated that Ms. Sorenson was going to trade sex for drugs with him. He testified that he knew Ms. Sorenson as he had previously dealt with her before by selling her drugs. The defendant said that he took her into the field and started to have sex with her, but he then lost interest because "she didn't attract me." Defendant testified that since he lost interest in having sex with Ms. Sorenson, he wanted her to pay him for the drugs. When she did not have the money, he hit her in the face with his fist. He than hit her two more times in the face and she fell down. Defendant claimed that it was Dennis Dranse who then came and kicked Ms. Sorenson in the ribs.
Defendant testified that on the date of the incident he was drinking strawberry schnapps. Defendant had no explanation of how Ms. Sorenson's clothing had been torn to pieces and thrown in the field. He maintained that Ms. Sorenson was fully clothed when he left her that morning. He admitted to hitting her three times in the face when she refused to pay for the drugs.
Defendant stated that when Dranse approached, defendant began calling Ms. Sorenson names like "bitch" and that is when Dranse kicked her in the ribs. He stated that they then left her for dead in the field after she did not appear to be breathing. Defendant testified that he did, in fact, go back to the boyfriend at the stranded truck and ask him for $80, but that was for drugs, not a deposit on the jumper cables. Defendant admitted that when he was first apprehended he had lied to Det. Coleman in his written statement and had given her a false alibi as to where he had been on June 30, 1997.
We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE STATE TO IMPEACH ITS OWN WITNESS, DENNIS DRANSE, WITH A PRIOR INCONSISTENT STATEMENT, THEREBY DENYING DEFENDANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN VIOLATION OF ARTICLE I, SECTIONS 10 AND 16, OF THE OHIO CONSTITUTION.
Defendant asserts that the trial court erred in permitting the State, over objection, to treat Dennis Dranse, its own witness, as a hostile witness and impeach him by means of prior inconsistent statements. He asserts that the State failed to demonstrate surprise and affirmative damage as required by Evid.R. 607.
Under Evid.R. 607, a party is permitted to impeach its own witness with a prior inconsistent statement if it can show that it was surprised by the witness's testimony at trial and if it can show "affirmative damage." State v. Davie (1997), 80 Ohio St.3d 311,323. Surprise is shown when the testimony is "materially inconsistent with the prior written or oral statements and counsel did not have reason to believe the witness would recant when called to testify." State v. Holmes (1987),30 Ohio St.3d 20, 23, State v. Stearns (1982), 7 Ohio App.3d 11, 16. Affirmative damage is established when the party's own witness's testimony contradicts, denies or is harmful to that party's trial position. Stearns, supra, at 15. The existence of surprise and affirmative damage are factual issues left to the sound discretion of the trial court. State v. Diehi (1981), 67 Ohio St.2d 389,391; State v. Moore (1991), 74 Ohio App.3d 334, 342.
Det. Patricia Coleman testified that on October 25, 1997, she took a written statement from Dennis Dranse concerning the June 30th incident. In Dranse's written statement of October 25, 1997, (State's Ex. 35), Dranse described the events of June 30, 1997 as to what he saw when he went back in the field looking for defendant. In his written statement, Dranse stated that when he saw defendant in the field he had "his shirt off and blood all over his back"; that the defendant had told the "lady to suck my dick"; he said that Sorenson's face had a "red shine"; that he heard Sorenson "whimper something like help me"; that the defendant "grabbed the clothing she had on and ripped it off of her; and that as he started walking away, he looked back and he [defendant] was throwing her clothes in the bushes."
At trial, the prosecution called Dennis Dranse as a State witness. He testified that defendant and Sorenson went into the field; he sat in the car and waited; eventually he got out and went into the field; he saw the two of them standing in the field; defendant put his shirt on.
The record reflects that immediately after Dranse testified that he merely saw defendant put his shirt on while standing in the field with the victim, the State asked Dranse if he remembered giving a statement to Det. Coleman on October 25, 1997. The State then questioned Dranse about the inconsistencies in his testimony and his prior statement. In response, Dranse denied telling the detective several facts that were included in the written statement that he signed. He denied telling the officer that the defendant told him to get out of there when Dranse approached in the field; that he said to the defendant "What did you do, Chris?" and the defendant answered "She didn't have no money"; that he told Det. Coleman that The defendant "grabbed the victim's clothing and he ripped it off of her"; and that the defendant told him what happened when they left. After Dranse stated that he never said any of these things in the statement, he also stated that he never read the statement even though he signed it. Dranse was then asked whether he saw any blood and whether her clothes were ripped off. He answered that he saw some blood on the victim's face and that her clothes were not ripped off, but sitting beside her.
The prosecutor then moved, pursuant to Evid.R. 607, for the Court to allow him to impeach his own witness based on these numerous inconsistencies between Dranse's testimony and his prior written statement. The defense objected. The trial court granted the motion and the State proceeded to cross-examine Dranse with the October 25, 1997 written statement.
We find that the trial court did not abuse its discretion in allowing the prosecution to cross-examine Dranse regarding the inconsistencies in his testimony and prior written statement. The State sufficiently established that it was surprised by Dranse's testimony at trial and that "affirmative damage" to the State's case would result if Dranse continued to testify in this manner.
First, as discussed above, surprise is shown when the testimony is "materially inconsistent with the prior written or oral statements and counsel did not have reason to believe the witness would recant when called to testify." The record clearly reflects that Dranse's trial testimony is significantly inconsistent with the statement that he gave to Det. Coleman on October 25, 1997. Dranse's testimony was taken by the prosecutor to be a refusal to corroborate Ms. Sorenson's testimony in every detail, as he did in his October 25th statement. The transcript similarly shows that Dranse's written statement corroborated the victim's testimony while his trial testimony supported the defendant's testimony thereby furthering the defense's theory of the case.
The record also reflects that the prosecutor contended that he had no indication from Dranse that he would recant his story when called to testify at trial. Dranse had been subpoenaed by the prosecution, had been written a number of letters and never communicated any such intention to the prosecution. As such, the record sufficiently establishes that the State had no reason to believe Dranse would recant his story when they called him to testify.
In State v. Lewis (1991), 75 Ohio App.3d 689, 696, the court stated:
 Whether a party is taken by surprise by a witness it has called "is a decision that is entrusted to the broad, sound discretion of the trial judge." State v. Diehl (1981), 67 Ohio St.2d 389, 391. * * * From the colloquy between the court and counsel, while there was a possibility of a change of story, it does not appear the witness expressly notified the authorities that he would wholly deny his prior statement to the police officers. Accordingly, we find no abuse of discretion in that regard.
Similarly, we are cautioned to leave this determination to the sound discretion of the trial court. Therefore, the trial court did not abuse its discretion in finding that the State established that Dranse's trial testimony was "materially inconsistent" with his prior written statement and that the State did not know that Dranse would alter his testimony when called to testify.
The trial court also did not abuse its discretion in finding that affirmative damage would result if Dranse's inconsistent testimony were to continue. The record reflects that there is no question that if Dranse persisted that nothing happened and "they were just standing there," it would have caused damage to the State's case by contradicting the victim's testimony and the physical and medical evidence presented by the State. We find no abuse of discretion in allowing the State to impeach its own witness under these circumstances.
Defendant's Assignment of Error I is overruled.
 II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIMINAL RULE 29 ON THE CHARGE OF RAPE, THEREBY DENYING DEFENDANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN VIOLATION OF ARTICLE I, SECTIONS 10 AND 16, OF THE OHIO CONSTITUTION.
 III. DEFENDANT'S CONVICTION FOR RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY DENYING DEFENDANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN VIOLATION OF ARTICLE I, SECTIONS 10 AND 16, OF THE OHIO CONSTITUTION.
These two assignments of error are closely related and will be addressed together.
Defendant is only challenging his conviction on the oral rape count and does not contest his felonious assault conviction.
The standard of review we must observe in passing on sufficiency of the evidence and manifest weight of the evidence issues were set forth by the Supreme Court of Ohio as follows inState v. Thompkins (1997), 78 Ohio St.3d 380, 386-87:
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29 (A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 0.0. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982). 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 0.0. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")
Crim.R. 29 (A) provides that a trial court "shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of such offense or offenses. A trial court may not grant an acquittal by authority of Crim.R. 29 (a) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. See State v.Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. See Id.
Under R.C. 2907.02 (A) (2), rape is defined as "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." In the case at bar, Ms. Sorenson testified that she was taken into a field by the defendant; punched repeatedly in the face and head; had her clothes ripped off her body; was forced to perform oral sex on defendant; was forced to engage in vaginal intercourse with the defendant, which she partially prevented; and was kicked in the ribs and left naked in a field by the defendant. Eventually she made her way back to her boyfriend, the police were called and she was treated at Fairview General Hospital.
In corroboration, the State presented police officers who testified to the physical condition of the victim; returning to the scene of the alleged crime with the victim, where they found her torn and bloody clothing thrown about the field. Photographs were taken of Ms. Sorenson's injuries and shown to the jury.
The State also presented corroborating evidence from the forensic scientist who testified to the victim's blood all over the clothing found in the field; the doctor who treated Ms. Sorenson testified to her injuries consistent with her testimony as to the beatings; and the defendant's friend, Dennis Dranse, a hostile witness, who corroborated Ms. Sorenson's testimony. The State also presented the defendant's written statement, which contained a false alibi.
The defendant's evidence was weak and contradictory. He admitted that his girlfriend/alibi defense was false. He admitted that he wanted to engage in sexual relations with Ms. Sorenson for drugs, but found her unattractive and decided against it, instead, beating her up, but not kicking her in the ribs.
Based on these facts, we cannot say that the jury clearly lost its way or that defendant's rape conviction created a manifest miscarriage of justice. Defendant's rape conviction was not against the manifest weight of the evidence. Furthermore, we find the trial court did not err in denying defendant's Crim.R. 29 motion for acquittal.
Defendant's Assignments of Error II and III are overruled.
 IV. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
Defendant contends that defense counsel repeatedly failed to object when improper references were made that a warrant for defendant had been referred to the ROPE Unit. (Aplt's Brf. at 17). Defendant further contends that defense counsel failed to present "any evidence relating to Ms. Sorenson's underlying history of arrests on drug charges, which went directly to her credibility bias."
This Court described the standard of review to make a showing of ineffective assistance of counsel in Lakewood v. Town (1995),106 Ohio App.3d 521, 525-26:
 The standard of review for ineffective assistance of counsel requires a two-part test and is set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The defendant must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Furthermore, when determining whether counsel's performance was deficient "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.'" Strickland v.Washington (1984), 466 U.S. 668, 689. A defendant's failure to satisfy either of the two Strickland tests is sufficient to dismiss the claim of ineffective assistance of counsel. -.
Det. Patricia Coleman utilized the ROPE Unit of the Cleveland Police Department to initially find Dennis Dranse, the first suspect's name that she had, and eventually defendant. The record reveals that defense counsel objected as to what the ROPE Unit had told Det. Coleman about Dranse.
After taking a statement from Dennis Dranse, Det. Coleman had the name of defendant and eventually, she got a home address for defendant from a former employer. She then had the ROPE Unit pick up defendant. Det. Coleman never mentioned that the defendant had a prior criminal record. Nothing in the record in the State's case indicated that the defendant had any prior record. Det. Coleman described the ROPE Unit as an undercover unit that finds felons that the police department cannot find. Defendant cannot establish that there is a reasonable probability that "but for" counsel's failure to object to these ROPE Unit references, the result of the trial would have been different. Accordingly, there was no prejudice to defendant from this testimony.
Defendant also contends that defense counsel was deficient in not presenting "any evidence relating to Ms. Sorenson's underlying history of arrests on drug charges, which went directly to her credibility-bias." (Aplt's Brf. at 20).
Defense counsel did not inquire on cross-examination of Ms. Sorenson about her prior misdemeanor drug convictions. We find that defense counsel acted properly.
Evid.R. 609 (A) (1) and (3) states:
 (A) General rule. For the purpose of attacking the credibility of a witness:
 (1) subject to Evid.R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted * * *.
* * *
 (3) notwithstanding Evid.R. 403 (A), but subject to Evid.R. 403 (B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.
Defendant asserts that defense counsel was deficient in failing to question the victim regarding prior misdemeanor drug convictions. However, pursuant to Evid.R. 609 (A) (1) and (3), such misdemeanor convictions are inadmissible to attack the credibility of a witness as they are not punishable by death or imprisonment in excess of one year and do not involve dishonesty. The record also reflects that the Court made a pre-trial ruling that Ms. Sorenson's prior misdemeanor drug convictions could not be used. (Tr. 427). Because this evidence was ordered inadmissible, counsel's failure to introduce it was clearly proper. Furthermore, -defendant asserts that defense counsel was deficient in failing to conduct "independent research" as to any convictions in other jurisdictions. Defendant is only speculating about defense counsel's deficiency as there is no indication in the record that such research would have revealed anything material. Again, it cannot be said that counsel's actions were deficient.
Defendant also asserts that he was denied ineffective assistance of counsel by counsel's "repeated mention about his background as a former police officer" which "raises an appearance of impropriety and divided loyalties." However, defendant has failed to cite to any part of the record where defense counsel refers to himself as a former police officer and has failed to set forth any evidence or argument that he was prejudiced by counsel's alleged remarks.
Defendant has failed to establish that counsel's representation fell below an objective standard of reasonableness or that there is a reasonable probability that, but for counsel's deficiency, he would have been acquitted of rape. Accordingly, we find no ineffective assistance of counsel.
Defendant's Assignment of Error IV is overruled.
 V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT THE RIGHT TO ATTACK THE BIAS OR CREDIBILITY OF THE ALLEGED VICTIM WHEN CREDIBILITY WAS CENTRAL TO THE CASE, THEREBY DENYING DEFENDANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND IN VIOLATION OF ARTICLE I, SECTIONS 10 AND 16, OF THE OHIO CONSTITUTION.
Defendant asserts that he had a right to attack the credibility of the victim with her past history of drug activity and the trial court abused its discretion by excluding such evidence, thereby denying him that right. This issue has already been addressed in the disposition of Assignment of Error IV. As discussed above, the trial court made a pre-trial ruling that defense counsel was precluded from using Ms. Sorenson's prior misdemeanor drug convictions to impeach her. This ruling was correct as such evidence was inadmissible under Evid.R. 609 (A). Accordingly, the trial court did not abuse its discretion in excluding this inadmissible evidence.
Defendant's Assignment of Error V is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 PATTON J., and BLACKMON, J., CONCUR.
___________________ JAMES M. PORTER ADMINISTRATIVE JUDGE