[Cite as *State v. Turnbull*, 2019-Ohio-4192.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 19CA12 |
| MICHAEL J. TURNBULL | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
Court of Common Pleas, Case
No.2018CR0986

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     October 10, 2019

APPEARANCES:

For Plaintiff-Appellee       For Defendant-Appellant

JOSEPH SNYDER       DALE MUSILLI
Assistant Prosecuting Attorney       105 Sturges Avenue
38 South Park Street       Mansfield, OH 44903
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Defendant-appellant Michael J. Turnbull ["Turnbull"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2} In the months leading up to October 22, 2018, Leslie Anne Fields-Turnbull called the police because Turnbull was physically and mentally abusing her and forcing her to sell drugs for him. Turnbull told her that she had to sell to people because she was a "working ass ho." 1T. at 221[1]. Ms. Fields-Turnbull testified that Turnbull told Ms. Fields-Turnbull to try a "pink pill." 1T. at 222. She did not know what it was and instead gave it to law enforcement. Id. Ms. Fields-Turnbull went to law enforcement out of fear because he had become abusive towards their children and herself. In working with law enforcement, Ms. Fields-Turnbull was told to stay away from the house for her safety, so she took her children, telling Turnbull that she had a family emergency, and stayed with her parents.

{¶3} On October 22, 2018, Turnbull left his home to go out of town. He told Ms. Fields-Turnbull she needed to sell his drugs for him and instructed her as to where they were hidden within the home. Ms. Fields-Turnbull then called METRICH. Ms. Fields-Turnbull testified that the residence was titled in her name. She signed a written consent to search the home and showed the officers where to find the drugs.

{¶4} On arrival, officers saw that there were surveillance cameras around the residence, an indicator of trafficking. Ms. Fields-Turnbull told officers that the drugs would

---

[1] For clarity sake, the jury trial commencing on January 10, 2019 will be referred to by volume and page number as "1T."; the transcript of Turnbull's Jury Trial commencing on January 11, 2019,and the Sentencing Transcript occurring on January 14, 2019 will be referred to by volume and page number as "2T."

be located in a bucket in the basement.  Inside the bucket, officers found a large chunk of a white substance, green vegetable matter, and forty-nine pink pills believed to be Ecstasy. Officers also found a digital scale, a razor blade knife, rolling papers, marijuana grinder, which the officers testified, were indicative of trafficking.

{¶5}   The white substance tested positive as 3.26 grams of cocaine.  The green vegetable matter tested positive as marijuana and weighed 259.6 grams.  The tablets tested positive as 37.2 grams of MDMA.

{¶6}   Turnbull and Ms. Fields-Turnbull's wedding anniversary was on August 23. On October 24, 2018, Turnbull texted Ms. Fields-Turnbull, indicating that he believed that she stole his drugs and he had people ready to buy them.

{¶7}   On November 9, 2018, a six-count indictment was filed in Richland County Court of Common Pleas against Turnbull.  Count One charged Turnbull with Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(c), a felony of the second degree.  Count Two charged Turnbull with Aggravated Possession of Drugs in violation of R.C. 2925.11(A) and (C)(1)(b), a felony of the third degree.  Count Three charged him with Trafficking in Cocaine, in violation of R.C. 2925.03(A)(2) and (C)(4)(b), a felony of the fourth degree.  Count Four charged Turnbull with Possession of Cocaine in violation of R.C. 2925.11(A) and (C)(4)(a), a felony of the fifth degree.  Count Five charged him with Trafficking in Marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(e), a felony of the third degree.  Count Six charged Turnbull with Possession of Marijuana in violation of R.C. 2925.11(A) and (C)(3)(c), a felony of the fifth degree.

{¶8}   Turnbull's case proceeded to trial on January 10, 2019.  Immediately prior to Ms. Fields-Turnbull testifying, Turnbull objected to her testimony under spousal

privilege in R.C. 2945.42. The trial court denied the motion as untimely. On January 11, 2019, the jury acquitted Turnbull on Counts One and Three but made findings of guilty on the remainder of the possession charges. On January 14, 2019, Turnbull was sentenced to forty-eight months in prison.

*Assignments of Error*

{¶9} Turnbull raises two assignments of error,

{¶10} "I. THE TRIAL COURT ERRED IN NOT INFORMING THE SPOUSAL WITNESS OF HER RIGHTS AGAINST SELF-INCRIMINATION AND AFFIRMATIVELY DETERMINING WHETHER HER TESTIMONY IS VOLUNTARY.

{¶11} "II. THE TRIAL COURT ERRED IN OVERRULING THE EXERTION OF THE SPOUSAL PRIVILEGE BY APPELLANT."

I. & II.

{¶12} In his First Assignment of Error, Turnbull argues that the trial court committed reversible error because the court failed to inform Ms. Field-Turnbull of her right not to testify and by failing to make an affirmative determination on the record that she has elected to testify. In his Second Assignment of Error, Turnbull contends that the trial court erred in determining that the exertion of the privilege by Turnbull was not timely made and therefore he waived his right to assert it. Each assignment of error, involves a similar analysis under Crim. R. 52, i.e. whether the error, if any, affected Turnbull's substantial rights.

**STANDARD OF APPELLATE REVIEW.**

***Spousal Competency Evid.R. 601.***

{¶13} Evid.R. 601 provides that "[e]very person is competent to be a witness except: * * * (B) A spouse testifying against the other spouse charged with a crime except when * * * (2) the testifying spouse elects to testify."  To ensure proper enforcement of this rule, this court has held that "a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse."

{¶14}  In *State v. Davis,* the Ohio Supreme Court held,

> An appellate court may not reverse a conviction for plain error based on the admission of spousal testimony in violation of Evid.R. 601(B) unless it conducts a plain-error analysis pursuant to *State v. Adamson* (1995), 72 Ohio St.3d 431, 650 N.E.2d 875, and determines that but for the error in admitting the spouse's testimony, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice.

127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, syllabus.

### *Spousal Privilege R.C. 2945.42.*

{¶15}  R.C. 2945.42 creates a privilege for spousal acts and communications:

> * * * Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third party competent to be a witness * * *.

{¶16}  Error involving spousal privilege is not a constitutional violation.  *State v. Webb,* 70 Ohio St.3d 325, 334, 1994-Ohio-425, 638 N.E.2d 1023.  In *Webb*, the Court noted,

Non-constitutional error is harmless if there is substantial other evidence to support the guilty verdict. See *State v. Davis* (1975), 44 Ohio App.2d 335, 346–348, 73 O.O.2d 395, 401–402, 338 N.E.2d 793, 802–803, citing *State v. Cowans* (1967), 10 Ohio St.2d 96, 104, 39 O.O.2d 97, 103, 227 N.E.2d 201, 207. See, also, *State v. Diehl* (1981), 67 Ohio St.2d 389, 399, 21 O.O.3d 244, 251, 423 N.E.2d 1112, 1119 (Stephenson, J., dissenting); *State v. Nichols* (1993), 85 Ohio App.3d 65, 73, 619 N.E.2d 80, 86, fn. 6.

70 Ohio St.3d at 335, 1994-Ohio-425, 638 N.E.2d 1023.

## ISSUE FOR APPEAL.

***Whether but for any error in admitting his wife's testimony the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice.***

{¶17} The R.C. 2945.42 privilege belongs to the non-testifying spouse. *State v. Savage,* 30 Ohio St.3d 1, 2, 30 OBR 11, 506 N.E.2d 196(1987). Thus, "[s]pousal privilege cannot be waived unilaterally and allows a defendant to prevent his or her spouse from testifying [as to a privileged communication] unless one of the statute's exceptions applies." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 55, fn. 3. On its face, the statute does no more than preclude a spouse from testifying to the other spouse's *statements. State v. Perez,* 124 Ohio SSt.3d 122, 2009-Ohio-6179, 920 N.E. 2d 104, ¶ 113. Thus, a spouse can testify to other facts. Accordingly, there is no requirement that a spouse raise the assertion of the spousal privilege in advance of the spouse testifying. "The existence of the marital privilege turns on the specific

circumstances surrounding each allegedly privileged communication, e.g., whether a third party was present. Thus, appellant had to object specifically so the circumstances could be determined." *State v. Henness,* 79 Ohio St.3d 53, 59, 1997-Ohio-405, 679 N.E.2d 686.

{¶18} In the case at bar, the trial court erroneously found Turnbull waived his ability to assert the spousal privilege because he did not raise it in a written motion well in advance to the start of his jury trial. 1T. at 212-213. However, "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Peeples v. Anderson* 73 Ohio St.3d 559, 560, 653 N.E.2d 371, 373(1995); *State ex rel. Cassels v. Dayton City School Dist. Bd. Of Edn.,* 69 Ohio St.3d 217, 222, 631 N.E.2d 150(1998). *Accord, State ex rel. v. McGinty v. Cleveland City School Dist. Bd. Of Edn.,* 81 Ohio 283, 290, 1998-Ohio-471, 690 N.E.2d 1273(1998).

**The outcome of the trial would not have been different had Fields-Turnbull not testified concerning privileged marital statements.**

{¶19} The jury acquitted Turnbull of the trafficking charges; Turnbull was convicted only of the charges involving possession of drugs.

{¶20} Because it does not involve Turnbull's statements, Fields-Turnbull would be permitted to testify that she had lived at the residence since 2012 and it was titled in her name. 1T. at 216; 238. That she and Turnbull are married. 1T. at 216. Turnbull moved into the residence in 2016. 1T. at 217. Turnbull was becoming physically and mentally abusive toward her and her children. 1T. at 220. That Turnbull gave her pink pills to try. 1T. at 222. That she contacted METRICH and signed a written consent to search her

home.  1T. at 226.  Fields-Turnbull would be permitted to testify that she observed Turnbull using drugs in the home.  1T. at 220-221.  She could testify that the drugs inside the home belonged to Turnbull.  1T. at 251.  Fields-Turnbull could testify that she was working with METRICH.

{¶21}  Detective Chris Rahall testified that he is with the Richland County Sherriff's Office.  He further testified that Fields-Turnbull executed a written consent to search the home.  She was at the residence and let the officers inside to conduct a search.  2T. at 273.  He found the drugs in question pursuant to the search of the residence.

{¶22}  Detective Perry Wheeler testified that Fields-Turnbull contacted him to request that drugs that were inside her home be removed.  2T. at 302-303.  He further testified that he executed a written consent to search the home with Fields-Turnbull.  2T. at 303.  He was present when the drugs were found.

{¶23}  We find that in the case at bar, the state introduced substantial evidence, independent of any statements made by Turnbull to his wife.  Since the record contains substantial independent evidence of the matters the state sought to prove with the spousal statements, we find their admission harmless.  Accordingly, we find no manifest injustice occurred.  We therefore find no reasonable possibility had the jury not been permitted to hear testimony of the Turnbull's statements to his wife they  would have found him not guilty, and hold that any error committed was harmless beyond a reasonable doubt.  *State v. Lytle* (1976), 48 Ohio St.2d 391, 403, 358 N.E.2d 623, 630-631, *vacated on other grounds* (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

{¶24}  Turnbull's First and Second Assignments of Error are overruled.

{¶25}  The judgment of the Richland County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, John, J., and

Wise, Earle, J., concur