[Cite as *State v. Larr*, 2023-Ohio-2128.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2022-0069 |
| MICHAEL L. LARR | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court of Common Pleas, Case No. CR2021-0577

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      June 27, 2023

APPEARANCES:

For Plaintiff-Appellee

RONALD L. WELCH
Prosecuting Attorney
BY: JOHN CONNOR
Assistant Prosecutor
27 North Fifth St., Box 189
Zanesville, OH 43702

For Defendant-Appellant

JAMES SWEENEY
285 South Liberty Street
Powell, OH 43065

*Gwin, P.J.*

{¶1} Defendant-appellant Michael Larr ["Larr"] appeals his conviction and sentence after a jury trial in the Muskingum County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On October 28, 2021, Larr was indicted at the Muskingum County Court of Common Pleas on two counts of Gross Sexual Imposition, both felonies of the third degree in violation of R.C.2907.05(A)(4).

{¶3} Around the summer of 2019, M.H. lost custody of P.W. (b. 06.30.2016) due to drug use. M.H.'s grandmother is Marilyn Larr, and her step-grandfather is Larr. Marilyn and Larr had temporary custody of P.W. and her older sister for approximately three months, after which their respective fathers received custody. Marilyn and Larr continued to have visitation with the children. Eventually, the children's mother regained custody of the two girls. The Larr's often babysat P.W. The Larr's would often have P.W. stay at their home with them from Sunday till Tuesday.

{¶4} On September 17, 2021, M.H. was playing with P.W. when P.W. tried to tickle her. M.H. testified that P.W. pointed to different parts on her own body to see if her mother was ticklish there. When P.W. pointed to her vagina, M.H. testified, "And I said, no, nobody's ticklish there. And that is when she said, yeah huh, I am. And I said, no, who tickles you there? She said, my pappaw tickles me there. I said, where are you when pappaw tickles you there? She said the camper." 2T. at 296. M.H. testified that the Larr's' have a camper on their property. P.W. would go there, and that "that was her and her pawpaw's time. They would get special snacks and watch DVD's in there.

It was like camping." 2T. at 296-297. No one else was present when P.W. made these allegations to M.H.

{¶5} M.H. telephoned P.W.'s father, who advised her to take the child to the hospital. After taking P.W. to Genesis (a local hospital) she was advised to take P.W. to Nationwide Children's in Columbus. ("CAC") Afterwards, a no-contact order was put in place for Marilyn and Larr. P.W. was interviewed at Nationwide Children's on the day after the allegations were made.

{¶6} Ms. Prince testified that she is a medical forensic interviewer who, as part of a multi-disciplinary team, conducts an interview of a child to assess for allegations of abuse or neglect. The interview is recorded with Ms. Prince alone in the room with the child. Other members of the team can watch as the interview is projected onto a screen in a separate room. Larr objected to the testimony and the video on the grounds that the statements of the child were hearsay and violated the confrontation clause. 1T. at 246. The trial judge overruled the objections. Id.

{¶7} During the interview P.W. indicated where she would have been touched by showing on a stuffed animal and by pointing to areas on an anatomical drawing of a girl without clothing on. State's Exhibit's 2 and 3. Through these methods P.W. indicated that she was tickled in the vaginal area. 1T. at 256. P.W. indicated that this tickling happened in the camper and in Larr's bed. 1T. at 259. The video recording of the interview was played for the jury. State's Exhibit 1.

{¶8} According to Ms. Prince, the normal process of a forensic interview will typically "begin with an introduction and rapport building, and then a review of the guidelines, a narrative event practice of a neutral event, and then getting into the

allegations, and then screening." 1T. at 264.  In the interview of P.W., Ms. Prince testified, "because she initiated disclosing early, we did not go through rapport building, interview guidelines, and the narrative event practice."  Id.  Ms. Prince did not make any determinations one way or the other if P.W. may have been coached or talked to prior to the interview.  Id

{¶9}  At Nationwide Children's the physical exam of P.W. was conducted, including an anogenital exam.  No physical trauma or any evidence of physical touching was found.  The reports of Ms. Prince and Nurse practitioner Carrie Nease were admitted into evidence.  State's Exhibit 4. 1T. at 261; 277.

{¶10}  Larr's wife Marilyn was called as a witness by the state.  She testified that she and Larr were married for eleven years and she never witnessed anything inappropriate occur between Larr and the girls.  Marilyn never saw any inappropriate conduct during the times she saw Larr and P.W. play the "tickle game." 2T. at 320; 328.  However, P.W. told Marilyn while being picked-up after the no contact order was put in place, "Grandma, did you know that Grandpa had touched me down there?" 2T. at 320.  Marilyn testified that when P.W. was smaller, P.W. would sleep in her underwear and Larr would sleep in his boxers.  Id. at 323-324. P.W. would sleep in Larr's bedroom.  2T. at 323; 329.  She further testified, "He just – he said that if [P.W.] wasn't allowed at – being with us—or at our house then he wanted a divorce." 2T. at 337.  If P.W. was allowed back, Larr indicated the couple would not get divorced.  Id. at 338.

{¶11}  Larr called Bob Stinson, Ph.D. to testify as an expert witness on memory formation and memory recall.  2T. at 396. Dr. Stinson is Board certified in forensic

psychology as well as having his Juris Doctorate degree. 2T. at 390; 392. The trial judge qualified Dr. Stinson as an expert witness. Id. at 398.

**{¶12}** Dr. Stinson testified concerning false memories in juveniles. Id. at 400. Dr. Stinson testified that the frequency in which false memories occur in sexual abuse cases ranges from six per cent to as high as sixty-five percent, depending upon a number of factors. 2T. at 401; 422. The best research available, according to Dr. Stinson, indicates that 25-35 per cent of the allegations are false. Id. at 402. The younger the child, the greater the likelihood of false allegations. Id. External factors, improper interview techniques and improper protocols are factors that contribute to false memory or unreliability of recalled events. Id. at 403-404. Dr. Stinson agreed that if a child were to tell a parent that something happened, it is appropriate to schedule a forensic interview of the child as soon as possible. Id. at 432-433. He agreed that an interviewer should remain neutral and understand different interviewing techniques. Id. at 441. Further, the interview should be recorded. Id. The interview should occur in a safe and child friendly environment. Id. The interviewer should build rapport with the child. The interviewer should use open-ended questions, and allow the child to provide their own responses to the questions. Id. The interviewer should not interrupt the child and should avoid suggestive questions. Id. at 442.

**{¶13}** Dr. Stinson's only real concern with the interview conducted by Ms. Prince was that she did not explore other viable hypotheses. Id. Dr. Stinson believed that she should have inquired further about the tickling, such as was the tickling in the vaginal area different in length or intensity than the tickling in the area of the legs or under the arms.

2T. at 442. Otherwise, Dr. Stinson maintained, you may not get the full picture. Id. at 443. Dr. Stinson did not see a fair exploration of alternative hypotheses in this case. Id. at 447.

{¶14} At the conclusion of Dr. Stinson's testimony, the trial court denied Larr's motion to admit his report into evidence. 2T. at 450-455.

{¶15} At the end of trial, the jury found Larr guilty of both charges. A sentencing hearing took place on July 25, 2022. At sentencing Larr was ordered to serve sixty months in prison on each count, to be served consecutively. He was classified as a Tier II Sex Offender and was awarded a total of two-hundred and sixty-nine days of jail time credit.

{¶16} By Judgment Entry filed August 22, 2022, the trial court found Larr to be indigent and appointed counsel to represent him on appeal. [Docket Entry No. 61]. Counsel filed a Notice of Appeal in this case on September 7, 2022. [Docket Entry No. 65].

{¶17} On January 27, 2023, Larr filed a pro se brief in this Court. [Docket Entry No. 13]. On February 16, 2023, Larr's attorney filed an appellate brief in this Court. [Docket Entry No. 15]. On February 22, 2023, Larr, pro se, sent a letter to this Court requesting copies of the record and transcript to enable him to file an appeal brief. [Docket Entry No. 16].

{¶18} On March 10, 2023, Larr, pro se, filed an appellant brief. [Docket Entry No. 19]. On March 27, 2023, Larr, pro se, filed another appellant brief. [Docket Entry No. 20]. On March 28, 2023, Larr, pro se, filed his "Final Written Brief of Information" with the clerk of courts. [Docket Entry No. 22].

{¶19} On April 10, 2023, Larr filed, pro se, a document titled, "Appeal" which appears to be yet another appellant brief. [Docket Entry No. 23]. On May 1, 2023, Larr sent a letter to the Court indicating that he misunderstood the appellate rules and did not realize he was supposed to wait until after his attorney filed his appellate brief before filing his own brief. [Docket Entry No. 34]. Larr indicated that another inmate suggest he apologize to his appointed counsel for getting ahead of things, and that his attorney may surprise him and do a good job.

{¶20} Larr raises four Assignments of Error,

{¶21} "I. THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHEN THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE DEFENDANT'S MOTION FOR ACQUITTAL AS THE GUILTY VERDICT AT THE TRIAL COURT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶23} "III. THE TRIAL COURT ERRED WHEN IT ADMITTED HEARSAY STATEMENTS PURSUANT TO EVIDENCE RULE 807, DENYING APPELLANT'S CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER.

{¶24} "IV. THE TRIAL COURT ERRED WHEN IT ADMITTED TESTIMONY CONCERNING PRIVILEGED MARITAL STATEMENTS."

**Hybrid Representation on Appeal**

{¶25} There is no "constitutional right to self-representation on direct appeal from a criminal conviction." *Martinez v. California*, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000) (denying the appellant's pro se motion to represent himself and to waive the

appointment of counsel on appeal).  Furthermore, "[a] defendant has no right to a 'hybrid' form of representation wherein he is represented by counsel, but also acts simultaneously as his own counsel." *State v. Keenan*, 81 Ohio St.3d 133, 138, 689 N.E.2d 929(1998), *citing McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122(1984); *State v. Tenace*, 109 Ohio St.3d 451, 2006-Ohio-2987, 849 N.E.2d 1, ¶10; *State v. Ferguson*, 108 Ohio St.3d 451, 2006-Ohio-1502, 844 N.E.2d 806, ¶97.

{¶26}  Having reviewed the pro se filings, we find that Larr is arguing that his convictions were against the manifest weight of the evidence; the jury should have found P.W. was coached; there was no physical evidence, no witnesses to the acts; and the jury should have believed Dr. Stinson.  These issues have been raised by appointed counsel in his appellate brief.

{¶27}  Since Larr does not have the right to represent himself or to act as co-counsel with appointed counsel on his appeal, we do not consider his pro se filings.

I.

{¶28}  In his First Assignment of Error, Larr maintains that his convictions for gross sexual imposition are against the manifest weight of the evidence.  In his Second Assignment of Error, Larr argues that there is insufficient evidence to support his convictions for gross sexual imposition.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶29}  The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570

U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶30} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421,

430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Larr was guilty beyond a reasonable doubt of Gross Sexual Imposition in violation of R.C. 2907.05.*

**{¶31}** Larr argues that the only direct evidence presented was the testimony of the alleged victim. The victim had no physical injuries, there was no confession by Larr and no proof that the touching was done for sexual gratification. Larr further points out that he voluntarily spoke to the police during the investigation.

**{¶32}** R.C. 2907.05, Gross Sexual Imposition provides,

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> * * *

> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

> * * *

**{¶33}** "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶34}** Whether touching is done for the purpose of sexual gratification is a question of fact to be inferred from the type, nature, and circumstances surrounding the contact. *State v. Cochran,* 5th Dist. Coshocton No. 03–CA–01, 2003–Ohio–6863, ¶ 15, *citing State v. Mundy*, 99 Ohio App.3d 275, 289, 650 N.E.2d 502(1994). We have held that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. *See, State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, ¶ 133. The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus.

**{¶35}** A conviction for rape or gross sexual imposition does not require proof of trauma or physical injury. *See State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014–Ohio–2181, ¶ 44, *citing State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013–Ohio–1446, ¶ 46; *State v. Schrock*, 11th Dist. Lake No. 2007-L-191, 2008-Ohio-3745, ¶ 23 ("The qualitative nature of these charges does not necessitate any specific physical injury or trauma to the genital area."); *Cf. State v. Hines*, 6th Dist. Lucas No. L-04-1234, 2006-Ohio-322, ¶ 20 ("Nevertheless, we find that it is the incidents of sexual abuse, not the actual physical injury to the victim's hymen, that the state must prove to establish rape.").

**{¶36}** In the case at bar, P.W. told her mother that Larr had tickled her vagina. P.W. told Larr's wife that Larr touched her "down there." P.W. told Celeste Prince that Larr tickled her vagina. She further showed on diagrams where the touching had occurred. The jury was able to see the forensic interview as it happened in real time via

the video recording. P.W. indicated that the touching occurred in the camper and in Larr's bedroom.

{¶37} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Larr engaged in sexual contact with P.W. who was five years old at the time. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Larr's convictions for gross sexual imposition.

### Standard of Appellate Review – Manifest Weight

{¶38} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

{¶39} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982)

(quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

{¶40} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶41} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the entire record in this matter we find Larr's convictions are not against the sufficiency

or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Larr's guilt.

{¶42} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found Larr guilty. Taken as a whole, the testimony and record contain ample evidence of Larr's responsibility for the alleged crimes. The fact that the jury chose not to believe the testimony of Larr's expert does not, in and of itself, render his convictions against the manifest weight of the evidence. While Larr is certainly free to argue that the forensic interview was not conducted correctly and that the hospital did not conduct a fair exploration of alternative hypotheses properly, on a full review of the record we cannot say that the jury clearly lost its way or created a manifest injustice by choosing to believe the testimony of the state's witnesses. The jury was able to observe the forensic interview in real time as it took place as well as hear Dr. Stinson subject to cross-examination.

{¶43} The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. The fact that the state may have relied on circumstantial evidence in proving Larr's guilt does not make his convictions any less sound.

{¶44} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Larr was convicted.

**{¶45}**  Larr's First and Second Assignments of Error are overruled.

III.

**{¶46}**  In his Third Assignment of Error, Larr contends the trial court erred when it permitted the out of court hearsay statements of P.W. to be admitted through the testimony of several witnesses and by the playing of her interview at CAC.  Further because P.W. did not testify during his jury trial, the admission of P.W.'s statements violated his confrontation rights.

**Standard of Appellate Review**

**{¶47}**  "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence."  *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).   "However, we review de novo evidentiary rulings that implicate the Confrontation Clause.  *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97.

**{¶48}**  We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. State of Cal.*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**{¶49}**  In Ohio, Evid.R. 807 provides an exception to the general inadmissibility of hearsay uttered by a child under the age of 12 that describes any sexual act performed by, with, or on the child.  This exception applies if (1) the court finds that the totality of the circumstances around the making of the statement provides a particularized guaranty of trustworthiness comparable at least to Evid.R. 803 and 804; (2) the child's testimony is

not reasonably obtainable by the proponent of the statement; (3) there is "independent proof" of the sexual act; and (4) the proponent of the statement has notified all other parties of the content of the statement at least ten days before the trial or hearing. Evid.R. 807(A)(1)-(4). The rule is stated in the conjunctive. In order for the out-of-court statements to be admitted under the rule, the proponent must demonstrate all of the above. *In re T.W.*, 8th Dist. No. 106231, 2018-Ohio-3275, 112 N.E.3d 527, ¶ 7.

**{¶50}** Larr did not object to the child's statements as testified to by the child's mother (2T. at 296) or his wife (2T. at 320). Thus, the trial court was never called upon to determine whether the statements were inadmissible hearsay or admissible pursuant to Evid.R. 807.

**{¶51}** Normally, an appellate court need not consider error that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court. *State v. Williams*, 51 Ohio St.2d 112, 117, 364 N.E.2d 1364 (1977). Accordingly, a claim of error in such a situation is usually deemed to be waived absent plain error. See Crim.R. 52(B). Larr did not raise plain error with respect to any of the child's statements, in general and with the child's statements to her mother and grandmother, in particular. Because he does not claim plain error on appeal, we need not consider it. *See, State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17–20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, 2015 WL 4549872, ¶ 25, *citing Wright v. Ohio Dept. of Jobs & Family Servs.*, 9th Dist. Lorain No. 12CA010264, 2013-Ohio-2260, 2013 WL 2407158, ¶ 22 ("when a claim is forfeited on appeal and the appellant does not raise plain error, the appellate

court will not create an argument on his behalf"); *State v. Carbaugh,* 5th Dist. Muskingum No. CT2022-0050, 2023-Ohio-1269, ¶67; *State v. Fitts,* 6th Dist. Wood Nos. WD18-092, WD18-093, 2020-Ohio-1154, ¶21; *Simon v. Larreategui,* 2nd Dist. Miami No. 2021-CA-41, 2022-Ohio-1881, ¶41.

**{¶52}** The only objection raised by Larr in the trial court was to the child's statements to Celeste Prince and the video of her interview at CAC with the child.  1T. at 246.

**Issue for Appellate Review:**  *Whether the trial court violated Larr's right to confrontation by allowing the state to introduce the forensic interview of the child when the child did not testify at trial*

**{¶53}** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

**{¶54}** In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)*,* the Supreme Court of the United States held that out-of-court statements that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court.  The Court defined these "testimonial" statements to include "ex parte in-court testimony or its functional equivalent- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used "prosecutorially" and "extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior

testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." 541 U.S. at 51-52.

**{¶55}** Thus, as to "testimonial evidence," "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68. "To trigger a violation of the Confrontation Clause, an admitted statement must be testimonial in nature, and must be hearsay." *United States v. Deitz,* 577 F.3d 672, 683 (6th Cir. 2009). A statement is testimonial where a reasonable person would anticipate that his or her statement would be used "against the accused in investigating and prosecuting the crime." *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004). *See also State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at paragraph two of the syllabus.

**{¶56}** Evid.R. 803(4) provides that the following are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

**{¶57}** In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, the Ohio Supreme Court considered the admissibility of statements made during interviews at child-advocacy centers. *Arnold* involved a Confrontation Clause challenge rather than Evid.R. 803(4), but the pertinent analysis is similar in many respects. The issue in *Arnold* was whether a child's statements during an interview were for medical diagnosis or treatment, making them "non-testimonial," or whether they primarily served

a forensic or investigative purpose, making them "testimonial" in violation of the defendant's confrontation rights.

**{¶58}** The Supreme Court first noted that child-advocacy centers are unique insofar as a single interview with a child serves "dual purposes," which are: "(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim." *Arnold* at ¶ 33. The majority then turned to the substance of the child's interview. It reasoned that some of the child's statements primarily had a forensic or investigative purpose. They included the child's assertion that the defendant had "shut and locked the bedroom door before raping her; her descriptions of where her mother and brother were while she was in the bedroom with Arnold, of Arnold's boxer shorts, of him removing them, and of what Arnold's 'pee-pee' looked like; and her statement that Arnold removed her underwear." Id. at ¶ 34. The Ohio Supreme Court reasoned that "[t]hese statements likely were not necessary for medical diagnosis or treatment. Rather, they related primarily to the state's investigation." Id.

**{¶59}** The *Arnold* Court also found, however, that "other statements provided information that was necessary to diagnose and medically treat" the child victim. Id. at ¶ 37. It noted that "[t]he history obtained during the interview is important for the doctor or nurse practitioner to make an accurate diagnosis and to determine what evaluation and treatment are necessary. For example, the nurse practitioner conducts a 'head to toe' examination of all children, but only examines the genital area of patients who disclose sexual abuse. That portion of the exam is to identify any trauma or injury sustained during the alleged abuse." Id. In particular, the Ohio Supreme Court held that the following

statements by the victim during the interview were necessary for medical diagnosis or treatment: "statements that described the acts that Arnold performed, including that Arnold touched her 'pee-pee,' that Arnold's 'pee-pee' went inside her 'pee-pee,' that Arnold's 'pee-pee' touched her 'butt,' that Arnold's hand touched her 'pee-pee,' and that Arnold's mouth touched her 'pee-pee.' " Id. at ¶ 38.  The fact that the victim already had undergone a "rape-kit examination" did not dissuade the majority from finding that the foregoing statements were necessary for subsequent medical diagnosis or treatment.  Id. at ¶ 39.  The majority also found nothing objectionable about considering the child's statements individually to determine which ones were for medical diagnosis or treatment and to exclude those that were not.  Id. at ¶ 42.  Finally, the Ohio Supreme Court found nothing objectionable about the fact that police watched the interview or the fact that information obtained for medical purposes ultimately was used to prosecute the defendant.  These considerations did "not change the fact" that some of the child's statements "were made for medical diagnosis and treatment." Id. at ¶ 43.

{¶60}  As in *Arnold*, a portion of P.W.'s statements described the sexual acts Larr performed on her and were thus relevant to medical diagnosis or treatment and, hence, admissible.  As to young children, the identity of the perpetrator of abuse is a treatment issue.  This is an exception to the general rule that the identity of the perpetrator is not relevant to diagnosis/treatment. *Ohio v. Clark*, 576 U.S. 237, 247–48, 192 L.Ed.2d 306, 135 S.Ct. 2173, 2182 ("Statements by very young children will rarely, if ever, implicate the Confrontation Clause."); *United States v. Joe,* 8 F.3d 1488, 1494 (10th Cir. 1993) (citing cases from the 4th, 8th and 9th Circuits).

{¶61} We find under the facts of this case that the statements made by P.W. to Celeste Price an interviewer at the child-advocacy center were made for medical diagnosis and treatment, and therefore admissible under Evid.R. 803(4). The statements are therefore nontestimonial and are admissible without offending the Confrontation Clause.

{¶62} Larr's Third Assignment of Error is overruled.

IV.

{¶63} In his Fourth Assignment of Error, Larr argues that the trial court erred in admitting statements made during the testimony of his wife that were barred by the spousal privilege. Larr points specifically to just one statement, his statement to his wife that if P.W. could not come over anymore, that he wanted a divorce. [Appellant's brief at 9].

**Standard of Appellate Review - Spousal Privilege R.C. 2945.42**

{¶64} R.C. 2945.42 creates a privilege for spousal acts and communications:

> * * * Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third party competent to be a witness * * *.

{¶65} Error involving privilege is not a constitutional violation. *State v. Webb,* 70 Ohio St.3d 325, 334, 1994-Ohio-425, 638 N.E.2d 1023. In *Webb*, the Court noted,

> Non-constitutional error is harmless if there is substantial other evidence to support the guilty verdict. See *State v. Davis* (1975), 44 Ohio App.2d 335, 346–348, 73 O.O.2d 395, 401–402, 338 N.E.2d 793, 802–803,

citing *State v. Cowans* (1967), 10 Ohio St.2d 96, 104, 39 O.O.2d 97, 103, 227 N.E.2d 201, 207.  See, also, *State v. Diehl* (1981), 67 Ohio St.2d 389, 399, 21 O.O.3d 244, 251, 423 N.E.2d 1112, 1119 (Stephenson, J., dissenting); *State v. Nichols* (1993), 85 Ohio App.3d 65, 73, 619 N.E.2d 80, 86, fn. 6.

70 Ohio St.3d at 335, 1994-Ohio-425, 638 N.E.2d 1023.

**Issue for Appellate Review:**  *Whether Larr invited the error of which he now complains*

**{¶66}**  We note the record indicates that Marilyn voluntarily testified against Larr. *See*, Evid.R. 601(B).

**{¶67}**  The R.C. 2945.42 privilege belongs to the non-testifying spouse.  *State v. Savage* 30 Ohio St.3d 1, 2, 506 N.E.2d 196(1987).  Thus, "[s]pousal privilege cannot be waived unilaterally and allows a defendant to prevent his or her spouse from testifying [as to a privileged communication] unless one of the statute's exceptions applies."  *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 55, fn. 3.  On its face, the statute does no more than preclude a spouse from testifying to the other spouse's *statements.  State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 113.  Thus, a spouse can testify to other facts.  Accordingly, there is no requirement that a spouse raise the assertion of the spousal privilege in advance of the spouse testifying. "The existence of the marital privilege turns on the specific circumstances surrounding each allegedly privileged communication, e.g., whether a third party was present.  Thus, appellant had to object specifically so the circumstances could be determined."  *State v. Henness,* 79 Ohio St.3d 53, 59, 1997-Ohio-405, 679 N.E.2d 686.

**{¶68}** Larr cites to nowhere in the record where he either asserted the spousal privilege or objected to his wife's testimony.

**{¶69}** Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663, 646 N.E.2d 1115(1995), citing *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359, 626 N.E.2d 950(1994). *See, also, Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145(1943), paragraph one of the syllabus. As the Supreme Court of Ohio has stated:

> The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible.

*Lester* at 92-93, 50 N.E.2d 145, *quoting State v. Kollar*, 142 Ohio St. 89, 91, 49 N.E.2d 952(1915).

**{¶70}** This is more than a simple failure to object to his wife's testimony. There is no doubt that the spousal privilege belongs to Larr and that it is his privilege, not the trial court's, to assert. *Cf. State v. Brunson,* Slip Op. No. 2022-Ohio-4299 (Dec. 5, 2022), ¶48

(attorney-client privilege) *citing United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir. 1994).

**{¶71}** Marilyn testified to a number of facts that could be perceived as beneficial to Larr's defense, raising at least a possibility that his failure to object or raise the issue of spousal privilege was a calculated strategy on his part. For example, Marilyn testified that she never observed any inappropriate conduct between Larr and P.W. Further, Marilyn never saw any inappropriate conduct during the times she saw Larr and P.W. play the "tickle game." 2T. at 320; 328. Marilyn testified that she did not observe anything inappropriate about the sleeping arrangements or clothing worn.

**{¶72}** So, to the extent that Larr now claims his wife should not have been permitted to testify, the error was invited. Id. at ¶50. Larr may not, either intentionally or unintentionally, induce or mislead the trial court into permitting the testimony of his wife without asserting the privilege and objecting to the testimony and then claim error on appeal.

**{¶73}** Larr's Fourth Assignment of Error is overruled.

{¶74} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur

*Hoffman, J., concurring*

{¶75} I concur in the majority's analysis and disposition of Appellant's first and second assignments of error.

{¶76} I also concur in the majority's analysis and disposition of Appellant's third assignment of error. However, I would also find the child/victim's statement to Celeste Prince was non-testimonial because the child/victim would not reasonably anticipate her statement would be used against the Appellant in investigating and prosecuting the crime.

{¶77} I further agree with the majority's disposition of Appellant's fourth assignment of error. However, I do so for a different reason.

{¶78} I do not believe the invited error doctrine applies in this case. Nonetheless, the admission of Appellant's wife's statement does not rise to the level of plain error.